**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**WENDY GORE**                                                                     **PLAINTIFF**

**V.**                                                        **NO. 4:24-CV-27-DMB-DAS**

**STATE FARM FIRE AND
CASUALTY COMPANY; and
JOHN DOES A, B and C**                                        **DEFENDANTS**

**OPINION AND ORDER**

Alleging she is entitled to additional insurance payments to fully cover the fire damage to her home, Wendy Gore sued State Farm Fire and Casualty Company claiming breach of contract, misrepresentation, breach of right to privacy, and bad faith. State Farm moves for summary judgment on all Gore's claims or, alternatively, for partial summary judgment. For the reasons below, summary judgment will be granted in part.

**I
Procedural History**

On March 13, 2024, Wendy Gore filed a complaint in the United States District Court for the Northern District of Mississippi against State Farm Fire and Casualty Company, and John Does A, B and C regarding a fire at her home. Doc. #1. Gore's complaint contains four counts: "Count One – Breach of Contract Claim for Insurance Proceeds;" "County [sic] Two – Bad Faith;" "Count Three – Misrepresentation;" and "Count Four – Breach of Plaintiff's Right to Privacy." *Id.* at 4, 6, 9. State Farm answered the complaint on April 25, 2024. Doc. #4.

On February 24, 2025, State Farm filed a motion for summary judgment. Doc. #23. Gore responded in opposition to the motion on May 8, after receiving a requested extension. Docs. #37,

#45. State Farm replied on May 19,[1] after being granted a requested extension.[2] Docs. #50, #51. On June 16, Gore filed the deposition of Damon Stroud in support of her summary judgment response. Doc. #58.

## II
## Standard

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Railway Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (quoting *Sandstad*, 309 F.3d at 896) (internal citation omitted).

In reviewing summary judgment evidence, a court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Id*. A party opposing a summary judgment motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986)).

---

[1] In its reply, State Farm objects to Gore's response exhibits as "improper," contending the exhibits "are rife with hearsay, inadmissible opinions and other objectionable materials." Doc. #51 at 2–3. But State Farm does not specify which of Gore's exhibits are improper. In that regard, State Farm's objections are too vague and conclusory to be considered by the Court. *See Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) ("Parties filing objections must specifically identify those findings objected to. …[C]onclusive or general objections need not be considered by the district court.").

[2] On May 27, State Farm filed a motion in limine seeking to prohibit the introduction of certain argument, evidence, and testimony at trial. Doc. #52.

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III
### Summary Judgment Record

In reviewing the parties' submissions on the summary judgment motion, the Court noticed some things that bear mention to the extent they affect what the Court will consider in evaluating the summary judgment issues. For one, the facts section of Gore's memorandum brief contains no citations to support the factual matters she asserts, except for four instances where she cites either Exhibit 1 or Exhibit 10 to her response. Doc. #46 at 1–2. But she provides no page cites to those two exhibits which are, respectively, 42 pages and 24 pages in length. Docs. #46-1, #46-2. Nor does Gore provide pinpoint cites to any of her response exhibits she cites in her brief.[3] *See generally* Doc. #46.[4] And of her 24 response exhibits—totaling 1385 pages—she cites only 18 exhibits[5]—totaling 651 pages—with the longest cited single exhibit consisting of 156 pages.[6]

Additionally, in her response brief Gore asks that she "be allowed to supplement her Response to the Motion for Summary Judgment with the deposition transcript of [State Farm's]

---

[3] In its reply, State Farm acknowledges this as well, stating that it "cannot locate a specific page reference to any of [Gore's] exhibits anywhere in [her] memorandum," and "the over 1300 pages of [Gore's] exhibits are dumped into the record with only the vaguest discussion of why many of them are included." Doc. #51 at 2, 3.

[4] Beyond the case law she cites for the summary judgment standard, Gore's brief also does not cite much authority on the substantive summary judgment issues. Where she does cite case law on the substantive issues, in all instances except three she fails to provide pinpoint cites to such case law. *See generally* Doc. #46 at 15, 17–20.

[5] At times, Gore cites Exhibit 11 when it appears she meant to cite Exhibit 12, and cites Exhibit 17 when it seems she intended to cite Exhibit 18.

[6] Doc. #45-11.

3

adjuster Damon Stroud." *Id.* at 1. Such request is inconsistent with Local Rule 7(b)(3)(C)'s mandate that "[a] response to a motion may not include a counter-motion in the same document." Though Gore's response indicates only that she "will supplement" her response with the "Deposition of Damon Stroud with Exhibits"[7] and she did so on June 16—nearly six weeks after she filed her response—she does not point out what portions of the 40-page deposition transcript (including its index)[8] are relevant to the summary judgment issues or pinpoint relevant pages. Doc. #58. More, the Court did not grant Gore leave to file the document.

Because Gore's brief contains no page cites to the response exhibits it mentions, the Court deems Gore to have forfeited her arguments in defense of the summary judgment motion. *See Schnell v. State Farm Lloyds*, 98 F.4th 150, 161 (5th Cir. 2024) ("Because the Schnells have failed to cite to any legal authority or record evidence in their brief …, they have forfeited their challenge to the district court's grant of summary judgment to State Farm."); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 & n.1 (5th Cir. 2021) ("A party may forfeit an argument through inadequate briefing in several ways, such as by failing to 'offer any … citation to authority' or by failing to "offer record citations.") (quoting *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016)); *see also Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).[9] More, because Stroud's deposition transcript was untimely filed, the Court will not consider it either. Consequently, none of Gore's arguments

---

[7] Doc. #45 at 2.

[8] Doc. #58.

[9] The Court acknowledges there are occasions when State Farm does not provide pinpoint cites to some of its exhibits referenced in its brief. However, unlike Gore, in those instances the referenced exhibit is a single page, contains a low number of pages, and/or the entirety of the exhibit is pertinent to the matter for which it is cited.

4

will be considered[10] or included in this order.[11]

## IV
## Factual Background

On the night of March 9, 2023, Wendy Gore's home in Cleveland, Mississippi, caught fire.[12] Doc. #23-11 at 14. At the time, Gore was in Monroe, Louisiana, for a doctor's appointment. *Id.* Gore's homeowner insurance policy with State Farm Fire and Casualty Company was in force when the fire occurred. *Id.* at 14. The policy provides coverage up to $508,816.00 for dwelling damage (Coverage A); $381,612.00 for personal property damage (Coverage B); and $152,645.00 for loss of use (Coverage C). Doc. #23-17 at 1.

The policy's dwelling damage provision states in relevant part:

(1) [U]ntil actual repair or replacement is completed, *we* will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability ….

(2) [W]hen the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability …, whichever is less.

Doc. #23-1[13] at PageID 137 (emphases in original). For a personal property claim, the policy provides that "until repair or replacement is completed, *we* will pay only the ***actual cash value*** of the damaged property," and requires certain duties of the policyholder, including:

After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

---

[10] Because Gore's response arguments will not be considered, the Court need not consider State Farm's reply arguments.

[11] Even had the Court considered Gore's arguments along with State Farm's reply, the outcome of the summary judgment motion would be the same.

[12] The same night, Gore's pickup truck burned at another location several miles from her home. Doc. #23-11 at 16. Gore suspects the person who remodeled her home is the same person who set fire to her truck. *Id.* at 18.

[13] The policy spells Gore's first name as "Windi." *See id.* at 1. Regardless, State Farm does not dispute that the policy was issued to Gore.

5

> …
>
> c. prepare an inventory of damaged or stolen personal property:
>
>> (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and
>>
>> (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;
>
> d. as often as *we* reasonably require:
>
>> (1) exhibit the damaged property;
>>
>> (2) provide *us* with any requested records and documents and allow *us* to make copies[.]

*Id.* at PageID 138–39 (emphases in original). Regarding loss of use, the policy specifies:

> When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:
>
> a. the time required to repair or replace the premises;
>
> b. the time required for *your* household to settle elsewhere; or
>
> c. 24 months.

*Id.* at PageID 127 (emphases in original).

On March 23, 2023, and April 27, 2023, State Farm claim representatives Damon Stroud and Charlie Foster recorded the findings of the March 22 inspection of the structural damage to Gore's home. Doc. #23-2 at 24. Stroud found some unsalvageable damage on the right side of the home; some salvageable damage in portions of the wall framing, floor framing, and foundation on the right side of the home; some repairable damage in the wall framing, floor framing, and roof in other areas of the home; and for the most part no damage on the left side of the home. Doc. #23-3 at PageID 158–59.

6

On May 2, 2023, Gore submitted a spreadsheet to State Farm with a detailed inventory of the personal property she lost in the fire. Doc. #23-12. Following an inconclusive investigation into the circumstances of the fire, State Farm's initial estimate for structural damage (Coverage A) was $405,072.64, and accounting for Gore's deductible and pre-reconstruction depreciation, State Farm estimated an initial payment of $293,570.24, which it paid Gore on May 8, 2023. Doc. #23-3 at PageID 159; Doc. #23-5 at PageID 163; Doc. #23-17 at 3. On June 9, 2023, Gore entered an agreement with The Watermark Group ("Watermark") for construction on her home. Doc. #23-10. Watermark estimated construction would be completed within 270 days of that agreement. *Id.* at PageID 400. Gore met with Stroud to review the structural damage estimate at some point after receiving her initial Coverage A payment.[14] Doc. #24 at 4. After Gore complied with Stroud's request for documentation of differences she noticed in actual and estimated material costs, State Farm increased the structural damage estimate to $431,804.28, and gave Gore an additional payment of $138,234.04 on July 20, 2023. *Id.* at 4–5; Doc. #23-7 at PageID 234; Doc. #23-17 at 3. "Shortly after this," Gore requested revisions to the materials in State Farm's estimate, and this revision resulted in a third estimate totaling $440,092.84. Doc. #24 at 5; Doc. #23-8 at PageID 304; Doc. #23-16 at PageID 542.

On July 25, 2023, finding that Gore indicated in her spreadsheet that $119,257.19 worth of lost personal property had been purchased in the year preceding the fire, State Farm requested additional documentation "supporting that her income was sufficient to buy nearly $120,000 in personal property in just one year." Docs. #24 at 8. Gore responded on July 25, 2023, by sending State Farm screenshots of deposits credited to her bank account from January 2022 to March

---

[14] The summary judgment record does not specify when this meeting took place.

7

2023.[15] Doc. #23-13.[16] In all, State Farm paid Gore $152,441.74 under policy Coverage B. Docs. #23-14 at PageID 516; #23-15.

Gore received another Coverage A payment of $7,288.56 on August 18, 2023. Doc. #23-17 at 3. Under the policy's Coverage C, State Farm paid Gore a total of $43,897.92 for loss of the use of her home from the month of the fire until April 2024; these payments covered reimbursement for her hotel stay for six nights, rental of a mobile home for thirteen months, and costs associated with installation of the mobile home on Gore's property.[17] Doc. #23-17 at 1, 3. Gore indicates she learned at some point before April or May of 2024 that although Ted Blockett, Watermark's construction manager, received $358,000 in payments from her bank for the renovation project, he only completed $80,000 worth of work. Doc. #23-11 at 49–50. Pursuant to this information, Gore instructed the bank to cease payments to Blockett, and Blockett stopped reconstruction work in April or May of 2024. *Id*. at 49–51. On February 21, 2025, citing "documents produced and [Gore's] recent explanations in her [January 23, 2025] deposition," State Farm paid Gore $36,097.25 and $299.59. Doc. #45-18.

## V
## Analysis

In seeking summary judgment, State Farm argues that all Gore's claims fail because it "has

---

[15] The transaction search spans all deposits entered between January 1, 2022, and March 9, 2023, and actual deposits span an approximately three-month period from January 7, 2022, to March 2, 2022. Doc. #23-13.

[16] State Farm notes:

> The document [Gore] produced only showed some deposits from January 7, 2022, to March 2, 2022. At the bottom right-hand side of the image is a total showing 83 credits amounting to $250,328.96. But there is no indication what time frame that figure covers, nor does it demonstrate any applicable withdrawals from the account. In her deposition, [Gore] testified her annual income is approximately $130,000.

Doc. #24 at 8. n.8.

[17] In its brief, State Farm indicates it paid $36,397.92 to Gore under Coverage C, Doc. #24 at 2, but the document it cites for such reflects it paid a higher amount, Doc. #23-17 at 1.

8

paid everything it owes under the terms of the policy," and "[a]t a minimum, [it] is entitled to partial summary judgment on [Gore's] claims for bad faith, punitive damages, or for any other extracontractual damages of any type." Doc. #24 at 1.

### A. Breach of Contract

Under Mississippi law,[18] the elements of a breach of contract claim are (1) the existence of a valid and binding contract, (2) breach of the contract, and (3) damages. *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012), *overruling in part Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992). Neither party disputes the existence of a valid and binding contract. *See Renasant Bank v. St. Paul Mercury Ins. Co.*, 235 F.Supp.3d 805, 817 (N.D. Miss. 2017) ("An insurance policy is a contract between the insurer and the insured, with the rights and duties set out by the provisions of the insurance policy; as such, an insurance policy is a contract subject to the general rules of contract interpretation."). State Farm argues it did not breach the policy because the home was not totally destroyed, Gore's compliance with requests for information is a condition precedent to additional payments for loss of use, and Watermark's failure to complete reconstruction of Gore's home constitutes a superseding event that prolonged her loss of use beyond what is reasonable and covered under the policy. Doc. #24 at 6–7, 14, 19.

#### 1. Structural damage

State Farm argues Gore has provided no evidence to support her contention that her house was totally destroyed by the fire, and her failure to designate an expert witness to testify otherwise renders her breach of contract claim in that regard fatally unsupported. Doc. #24 at 10–12.

As State Farm correctly points out, "structural damages to homes, the long-term effects of

---

[18] Because the elements of a breach of contract claim are substantive law, courts apply the law of the forum state in reviewing breach of contract claims. *Sugg v. Midwestern Univ.*, 105 F.4th 345, 352 (5th Cir. 2024).

9

moisture on a house, and other categories of property damage require expertise to accurately understand and are therefore not properly the subject of lay opinion on causation." *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24, 2024 WL 1183670, at *7 (S.D. Miss. Mar. 19, 2024). Gore has not designated any expert witnesses to corroborate her assertion that the structural damage constitutes a total loss.[19] *Id*. Because Gore has not provided competent evidence to create a genuine issue of material fact as to the extent of her structural damage, State Farm is entitled to summary judgment on Gore's structural damage claim.

### 2. Personal property

State Farm argues that Gore "is not entitled to any additional policy benefits for personal property" because "[t]he information [it] requested [from Gore] was both consistent with the terms of the policy and necessary for [it] to calculate the amount owed, if any, for the items identified as needing additional documentation;" "[w]ithout such documentation, there is also no evidence to establish the actual case value for the remaining claimed personal property;" and Gore's "failure to provide the requested documentation constitutes a failure to comply with her duties under the policy." Doc. #24 at 15 (citing *Allison v. State Farm Fire & Cas. Co.*, 543 So. 2d 661, 664 (Miss. 1989)).

"Under Mississippi caselaw, an insured's failure to provide requested financial information to an insurance company that is adjusting a claim may lead to a denial of the claim." *McPhail v. State Farm Fire & Cas. Co.*, No. 92-7444, 1993 WL 152061, at *3 (5th Cir. April 30, 1993). "In its effort to 'possess itself of all knowledge' in order to protect against false claims, an insurer may

---

[19] Regardless, Fire Chief Matt McNutt's report states that the dwelling suffered $300,000 worth of damage—not that the dwelling was a total loss. Doc. #45-4 at PageID 821; *see Jackson v. Parker-Hannifin Corp.*, 645 F.Supp.3d 577, 594–97 (S.D. Miss. 2022) (expert testimony from "Fire Practice Leader" with "over 38 years of experience in performing investigations of both small and large-scale fire and explosion losses resulting in property damages" admissible as helpful to jury in determining proximate causation).

10

seek more financial data than an insured originally provides so as to satisfy itself of the insured's financial position." *Id.* This financial data may include "income tax returns, evidence of indebtedness, bank records, loans, ownership of property, salary information, mortgage payment status, and credit history," and an insured is "'required to respond to all reasonable inquiries and to give all reasonable assistance'" or face denial of recovery. *Id.* (quoting *Allison*, 543 So. 2d at 662).

The policy authorizes State Farm to request additional financial information to justify the issuance of additional funds to Gore, and Gore was required to comply with such request for State Farm to determine whether additional payment for personal property loss was proper. Doc. #23-1 at PageID 139. Nothing in the summary judgment record suggests that State Farm exceeded the scope of what it deemed necessary to satisfy itself of Gore's financial position. Given Gore's failure to comply with State Farm's reasonable requests to provide financial information, State Farm's denial of additional funds for personal property loss was not a breach of the policy. Consequently, State Farm is entitled to summary judgment on Gore's personal property claim.

### 3. Living expenses

State Farm argues Gore is not entitled to any additional living expense because the estimated repair timeline is not the issue—"[r]ather, the issue is that [Gore's] contractor walked off the job after completing only minimal work" and such "is not a loss insured that triggers additional living expenses under the policy;" and "considering the need for expert testimony on repair costs and structural damage, even if [Gore] wished to dispute [its] repair timeline, she would need expert testimony on that issue, which she does not have." Doc. #24 at 12–13.

Reconstruction work on the home ceased in April or May of 2024, and was not completed. Gore does not indicate she lived anywhere other than in the mobile home situated on her property,

11

nor does she claim she plans to settle elsewhere.[20] So under the policy, the shortest period of incurred costs to determine whether Gore is entitled to be paid for living costs incurred during the remainder of the 24-month period depends on whether the stalled reconstruction work broke the causal connection between the fire and the home's continued uninhabitability such that the remaining incurred costs cannot be reasonably linked to the fire. *See Standard Oil Co. of N.J. v. United States*, 340 U.S. 54, 57–58 (1950) ("[T]he existence or non-existence of causal connection between the peril insured against and the loss has been determined by looking to the factual situation in each case and applying the concept of 'proximate cause.'") (citing *Aetna Ins. Co v. Boon*, 95 U.S. 117 (1877); 3 Kent's Commentaries 302 (14th ed., Gould, 1896)).

State Farm does not challenge whether a construction delay is reasonably foreseeable.[21] *See* Doc. #24 at 13 ("No one disputed the reasonable time to complete the repairs."). The question is whether the complete cessation of the reconstruction work—as opposed to delayed ongoing construction—was a reasonably foreseeable result of the fire. Because "those insured and those insuring cannot predict with certainty what a trier of fact might decide is the predominant cause of loss," the proximate cause of the dwelling's extended uninhabitability leaves a genuine issue of material fact. *Standard Oil Co. of New Jersey*, 340 U.S. at 61. To the extent there remains a genuine issue of material fact as to the predominant cause of the dwelling's continued uninhabitability, State Farm is not entitled to summary judgment on the loss of use claim. *See National Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 550 (5th Cir. 2005) ("But, 'the

---

[20] To the extent State Farm paid rent for the mobile home under the impression Gore would return to her home, the Court concludes that the mobile home is not to be considered "settle[ment] elsewhere" under Coverage C.

[21] "Unfortunately, in cases of competing concurrent causes [in insurance contract disputes], there are few if any tools to which courts can turn. Often, the result is an importation of proximate cause principles of tort and the underlying morality issues that comes with that. Causation principles in contract law generally are relegated to questions about the link between breach of the contract and reasonably foreseeable loss." Erik S. Knutsen, *Confusion About Causation in Insurance: Solutions for Catastrophic Losses*, 61 Ala. L. Rev. 957, 971–72 (2010) (citing RESTATEMENT (SECOND) OF CONTRACTS § 351 (1981)).

question whether or not the defendant did in fact foresee, or had reason to foresee, the injury that the plaintiff has suffered is a question of fact for the jury.'") (citing 11-56 *Corbin on Contracts* § 1012 (2005)).

### B. Bad Faith Claim

State Farm argues that "[t]here is certainly no evidence in this case of fraud or of 'willful, wanton or reckless disregard for the safety of others' required to impose punitive damages, much less clear and convincing evidence;" it "inspected the property determining that it was not totally destroyed by the fire and was repairable," which is corroborated by its designated engineer; as to malice, "[t]here is simply no evidence of conduct rising to the heightened level of an independent tort [when it] has already paid over $600,000 to [Gore];" and it has an arguable basis for denying Gore's claims. Doc. #24 at 19, 20, 21.

"Under Mississippi law, insurers have a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation' and may be liable for punitive damages for denying a claim in bad faith." *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 627–28 (5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). To recover punitive damages for bad faith denial of an insurance claim, a plaintiff "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992) (citing *Dunn v. State Farm Fire & Cas. Co.*, 711 F.Supp 1362, 1364 (N.D. Miss. 1988), *aff'd*, 927 F.2d 869, 872 (5th Cir. 1991)). "Punitive damages may not be awarded unless *both* of these prongs are satisfied." *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 708 (5th Cir. 2020) (emphasis in original) (citing *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988)).

13

With respect to the first prong, "[t]he insurer need only show that it had reasonable justifications, either in fact or in law, to deny payment." *Wigginton*, 964 F.2d at 492 (citing *Dunn*, 927 F.2d at 873). "In deciding whether an insurer had an arguable basis to deny insurance liability, Mississippi courts apply the directed verdict test," meaning "[u]nless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most cases." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Given that State Farm's cited basis for the amounts it paid Gore were based on its inspection, corroborated by its designated engineer, and on Gore's statements during her deposition,[22] there exists more than a mere scintilla of evidence to support State Farm's position such that a reasonable jury could find in its favor. So, State Farm had an arguable basis for its decision to deny issuing the maximum payment, and State Farm is entitled to summary judgment on the bad faith claim.[23]

### C. Misrepresentation Claim

State Farm argues that Gore has only made a "threadbare allegation of misrepresentation" insufficient to satisfy the pleading requirements; and as to the portion of the complaint alleging it is "equitably estopped from denying the existence of the promise and agreements made among the

---

[22] Doc. #24 at 2, 3, 9, 19.

[23] The Court need not proceed to determine if any conduct by State Farm constitutes malice to the extent the first prong is not satisfied. Mississippi Code § 11-1-65(1)(a) provides that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Malice requires a finding that "[t]he insurer committed a [willful] or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Mitchell*, 954 F.3d at 708 (quoting *State Farm Mut. Aut. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998)). There is no evidence that State Farm acted with malice.

14

parties," "'it is a long-settled rule of law in Mississippi that the doctrines of waiver and estoppel may not operate to create coverage or expand existing coverage to risks expressly excluded.'" Doc. #24 at 16, 17 (citing *Am. Nat'l Prop. & Cas. Co. v. Estate of Farese*, 530 F.Supp.3d 655, 670 (S.D. Miss. 2021)).

A fraud claim under Mississippi law has nine elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x. 734, 739 (5th Cir. 2015) (quoting *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984)).

Gore fails to satisfy the heightened pleading standard with respect to her misrepresentation claim to the extent she claims fraudulent misrepresentation.[24] *See Benchmark Electronics, Inc., v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) ("Rule 9(b) requires 'the who, what, when, where, and how' to be laid out.") (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). For these reasons, State Farm is entitled to summary judgment on the misrepresentation claim. *See Hoffman v. L&M Arts*, 838 F.3d 568, 576–77 (5th Cir. 2016) (no error in granting summary judgment where plaintiff failed to plead fraudulent misrepresentation claim with Rule 9(b) specificity).

### D. Breach of Right to Privacy Claim

State Farm argues it is entitled to summary judgment on Gore's breach of privacy claim

---

[24] While her brief mentions only negligent misrepresentation (which her complaint does not specify), the heightened pleading standard still may apply. *See Benchmark Elecs.*, 343 F.3d at 723 ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims.") (quoting *Williams*, 112 F.3d at 177).

because under "well-settled Mississippi law," insurers are entitled to request the type of substantiating information that it requested, and "[i]n this case, it was more than reasonable to question whether [Gore] had the financial means to purchase $119,000 of personal property within one year before the fire." Doc. #24 at 16.

"The tort of invasion of privacy is comprised of four distinct and separate sub-torts which are as follows: (1) [t]he intentional intrusion upon the solitude or seclusion of another; (2) [t]he appropriation of another's identity for an unpermitted use; (3) [t]he public disclosure of private facts; and (4) [h]olding another to the public eye in a false light." *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (Miss. 1999) (citing *Candebat v. Flanagan*, 487 So. 2d 207, 209 (Miss. 1986)). "[T]o recover for an invasion of privacy, a plaintiff must meet a heavy burden of showing a substantial interference with his seclusion of a kind that 'would be highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object.'" *Id.* (internal quotation marks omitted).

Because the Court concludes that the financial records State Farm requested for use in its investigation are the type of documents request acceptable in the insurance context as explained above, summary judgment on the breach of privacy claim will be granted.

## VI
## Conclusion

State Farm's motion for summary judgment [23] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED on all Gore's claims except her claim for breach of contract based on additional living expenses. The motion is DENIED in all other respects.

**SO ORDERED**, this 30th day of September, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**